IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUIS PALLARES,

      Petitioner,

v.                                                   No. 18-cv-546 MV-SMV

RICHARD MARTINEZ, *et al*,

      Respondents.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Luis Pallares' 28 U.S.C. § 2254 Habeas Corpus Petition (Doc. 1). Petitioner asks the Court to vacate his state convictions for criminal sexual penetration. The Court previously directed Petitioner to show cause why his § 2254 Petition should not be dismissed as untimely. Having reviewed his response and independently researched the state docket to confirm the time-bar, the Court must dismiss the Petition.

**I.  Procedural Background**

The background facts are taken from the Petition and the state court docket in Petitioner's criminal case, Case No. D-202-CR-2007-01932. The state criminal filings are subject to judicial notice. *See Mitchell v. Dowling,* 672 F. App'x 792, 794 (10th Cir. 2016) (Habeas courts may take "judicial notice of the state-court docket sheet to confirm the date that each [state] motion was filed"); *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records … concerning matters that bear directly upon the disposition of the case at hand").

On January 26, 2010, Pallares pled no contest to two counts of first-degree criminal sexual penetration (child under age 13) and two counts of second-degree criminal sexual penetration (child

aged 13 to 18).  (Doc. 1 at 1).  The state court sentenced him to thirty years imprisonment.  *Id.*

Judgment on the conviction and sentence was entered January 27, 2010.  *Id.*; *see also* CLS: Guilty

Plea/Judgment in Case No. D-202-CR-2007-01932.  Pallares did not appeal.  (Doc. 1 at 2).  The

Judgment became final no later than March 1, 2010, the first business day following expiration of

the 30-day appeal period.  *See Locke v. Saffle*, 237 F.3d 1269, 1271-1273 (10th Cir. 2001) (For

purposes of § 2254, the conviction becomes final upon the expiration of the state appeal period);

NMRA, Rule 12-201 (notice of appeal must be filed within thirty days after entry of the judgment).

The state court reflects that there were no filings by Pallares for over three years.  *See*

Docket Sheet in Case No. D-202-CR-2007-01932.  On October 31, 2013, he filed a Motion for

Records.  *See* MTN: Motion in Case No. D-202-CR-2007-01932.  The body of the motion

indicates that Pallares "seeks to secure post-conviction relief."  *Id.*  The state court denied relief

by an order entered August 20, 2014.[1]  *See* ORD: Order in Case No. D-202-CR-2007-01932.

Thereafter, Pallares filed a series of state motions for reconsideration and habeas relief.  *See*

Docket Sheet in Case No. D-202-CR-2007-01932.  The New Mexico Supreme Court ("NMSC")

denied certiorari review in connection with the most recent state habeas motion on March 23, 2018.

*See* ORD: Court of Appeals/Supreme Court in Case No. D-202-CR-2007-01932.

On June 13, 2018, Pallares filed the instant federal § 2254 proceeding (Doc. 1).  He

contends that trial counsel was ineffective and that new evidence demonstrates that he is innocent.

(Doc. 1 at 5, 7-10).  By an Order entered March 24, 2020, the Court screened the Petition under

Habeas Corpus Rule 4 and determined that it was plainly time-barred.  (Doc. 5).  Petitioner filed

---

[1] An exhibit submitted by Petitioner indicates that counsel provided the records to Petitioner's representative, Dina Miranda, in October 2013.  (Doc. 6 at 18).

a show-cause response on April 23, 2020 (Doc. 6), and the matter is ready for review.

### III.   Discussion

Section 2254 petitions generally must be filed within one year after the defendant's conviction becomes final.   28 U.S.C. § 2244(d)(1)(A).   The one-year limitation period can be extended:

(1)      While a state habeas petition is pending, § 2244(d)(2);

(2)      Where unconstitutional state action has impeded the filing of a federal habeas petition, § 2244(d)(1)(B);

(3)      Where a new constitutional right has been recognized by the Supreme Court, § 2244(d)(1)(C); or

(4)      Where the factual basis for the claim could not have been discovered until later, § 2244(d)(1)(D).

Because the limitation period is not jurisdictional, it may also be extended through equitable tolling. *See Clay v. United States*, 537 U.S. 522, 524 (2003).

As previously noted, the limitation period began to run no later than March 1, 2010, when Petitioner's conviction became final.   *See Locke*, 237 F.3d at 1271-1273.   There was no tolling activity during the next year, and one-year limitation period expired on March 1, 2011.   Any state habeas petitions filed in 2013 did not restart the clock or otherwise impact the expired limitations period.   *See Gunderson v. Abbott,* 172 F. App'x 806, 809 (10th Cir. 2006) ("A state court [habeas] filing submitted after the ... [one-year] deadline does not toll the limitations period."); *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001) ("[The § 2254] petitions cannot be tolled for time spent in state post-conviction proceedings because the applications for post-conviction relief were

not filed until after … end of the limitations period").   Absent tolling, the § 2254 Petition filed on June 13, 2018 is time-barred by at least seven years.

The Court explained the above principles in its Order to Show Cause and set forth the legal standard to obtain tolling.   (Doc. 5).   Petitioner's response does not dispute the state court filing timeline, and he appears to concede that he did not seek habeas relief within one year after the Judgment became final.   (Doc. 6).   However, Petitioner seeks tolling because: (1) new evidence demonstrates that he is innocent; and (2) his plea counsel provided ineffective assistance.   *Id.*   The Court will address each argument below.

### A.   Actual Innocence

A "credible showing of actual innocence" serves as a "gateway through which a petitioner may pass" so that a federal court can review the merits of an untimely habeas claim.   *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).   *See also Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007) ("A claim of actual innocence may toll the AEDPA statute of limitations.").   The Tenth Circuit has "stress[ed] that th[e] actual innocence exception is rare and will only be applied in the extraordinary case."   *Lopez v. Trani*, 628 F.3d 1228, 1231 (10th Cir. 2010) (quotations omitted). "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard."   *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014). Moreover, "[a]ctual innocence" in this context refers to factual innocence and not mere legal sufficiency.   *Bousley v. U.S.*, 523 U.S. 614, 623-624 (1998).

To obtain relief under the "actual innocence" exception, a habeas petitioner must "'persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"   *Burke v. Bigelow*, 792 F. App'x 562,

4

565 (10th Cir. 2019) (quoting *McQuiggin*, 569 U.S. at 386).   The new evidence must be inherently reliable, "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."   *Schlup v. Delo*, 513 U.S. 298, 324 (1995).   The Court must also consider petitioner's evidence as a whole, "incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," and "assess how reasonable jurors would react to the overall, newly supplemented record."   *House v. Bell*, 547 U.S. 518, 538 (2006).

As an initial matter, it is not entirely clear whether Petitioner asserts his factual innocence, or whether he seeks habeas relief based on counsel's failure to test the evidence before he entered a plea.   The show-cause response states: "Petitioner is not claiming factual innocence, but is claiming actual innocence on newly discovered evidence on the constitutional right to effective counsel."   (Doc. 6 at 8).   Even assuming that Petitioner does assert his factual innocence, the evidence does not satisfy the above standard.   Petitioner relies on two exhibits to demonstrate that he did not rape his stepdaughters: (1) an affidavit from a Children Youth and Families Department ("CYFD") social worker, which states that the girls initially denied any abuse; and (2) DNA results, which reportedly show that his saliva did not match that of his stepdaughter, A.M.   (Doc. 6 at 2).

The CYFD affidavit, as a whole, is not exculpatory.   Petitioner highlights the following statement by the CYFD social worker:

> At the Safehouse interview [in 1999], both of the children denied any sexual activity was occurring between them and [Petitioner].   [C.M.] stated she made the comments because she was seeking attention from her older sister, and did not understand why anyone believed her.

(Doc. 6 at 13).   However, the CYFD affidavit goes on to describe how: (a) the abuse was again reported in 2002, and the girls' mother hid Petitioner in Mexico; (b) A.M. - who was then 12 - was

hospitalized due to a miscarriage; (d) her mother initially withheld consent for DNA testing of the fetus to determine paternity; and (e) both girls provided detailed reports about Petitioner's sexual abuse between the ages of 8 and 15 years old.   *Id.* at 13-15.   The CYFD affidavit was signed on August 28, 2002 and is not new evidence.   *Id.* at 17.   The Court is also unable to conclude that a reasonable juror would believe that Petitioner was innocent based on the affidavit, even if the girls initially denied any abuse.

As to the DNA evidence, Petitioner points to two separate exhibits.   The first exhibit is a Criminalistics Biology Report indicating that police examined saliva from Petitioner and saliva and biological material from A.M.   (Doc. 1 at 25).   The Criminalistics Report does not contain any results, but remarks that the items were forwarded to Texas for analysis.   *Id.*   The Criminalistics Report is dated "7-1-08."   *Id.*   The second, untitled exhibit appears to be a Bernalillo County Sheriff's Office form requesting Petitioner's mug shot and rap sheet.   *Id.* at 26.   The second exhibit is dated "8/2/2," and another date stamp bears the date "Aug. 8 12:59 PM '02."   *Id.*   It includes a checked box at the bottom titled "Negative Results," but the handwritten form does not indicate what test was performed.   *Id.*   Based on the dates, and the lack of any information linking the two reports, it does not appear from the instant record that the second exhibit confirms that Petitioner's DNA did not match that of A.M.[2]

---

[2] To be thorough, the Court also examined the state court record, which confirms that the second, untitled report is unrelated to the Criminalistics Report, and that Petitioner's DNA was not in fact excluded from A.M.'s sample.   Petitioner's 2015 state habeas petition contains a copy of the Criminalistics Report along with a "Report of Laboratory Examination" (Lab Results) from the Texas laboratory.   *See* RPN: Habeas Corpus Petition filed November 19, 2015 in Case No. D-202-CR-2007-01932. The Lab Results reflect that police eventually tested A.M.'s "products of conception" after her miscarriage.   *Id.* at 47.   Because no "fetal DNA profile was identified in the products of conception, paternity calculations could not be performed."   *Id.*   Although Lab Results are not part of this federal record, the Court takes actual innocence claims seriously, and the exhibits provide additional support for the denial of habeas relief.

Even if the exhibits reflected a DNA exclusion, however, this would still not qualify as "strong," "reliable" evidence of innocence.  *See Schlup*, 513 U.S. at 316.  The Tenth Circuit has held that DNA exclusions do not establish actual innocence in habeas cases involving the abuse of children and mentally disabled victims.  *See Renteria v. Bryant*, 774 F. App'x 440, 445 (10th Cir. 2019) (habeas petitioner could not challenge his rape conviction under the actual innocence exception by citing a forensic report that excluded him as a contributing source of DNA on the mentally disabled victim); *Cf Cummings v. Sirmons*, 506 F.3d 1211, 1223 n. 2 (10th Cir. 2007) (analyzing a murder conviction, and noting that DNA exclusion was only "marginally beneficial" where petitioner spent significant time in bed with an unclothed child).  *Id.*  As *Renteria* points out, a rape conviction does not "require[] the presence of [body] fluid."   774 F. App'x at 445.   The Tenth Circuit is also skeptical of using inconclusive DNA evidence to establish innocence where the habeas petitioner previously pled guilty.  *See Johnson v. Medina,* 547 F. App'x 880, 884-885 (10th Cir. 2013) (dismissing claims regarding inaccurate serology report, and noting that "his plea of guilty simply undermines his claim that another individual committed the crime to which he pled guilty"); *Goosby v. Trammell,* 515 F. App'x. 776, 777 (10th Cir. 2013) (focusing on the guilty plea in rejecting actual innocence claim).

As noted above, Petitioner pled no contest to criminal sexual penetration of both A.M. and C.M.  The CYFD affidavit also reflects that A.M. and C.M. both reported the sexual abuse to multiple people.  (Doc. 6 at 12-15).  They specifically alleged that he forced them to have intercourse over a span of several years.  *Id.*  Even if a DNA test excluded Petitioner's saliva from a sample taken from A.M., a "reasonable juror" could still convict him of criminal sexual penetration.  Accordingly, the actual innocence exception cannot overcome the time-bar in this

case.

**B. Tolling Based on Errors by Counsel**

Petitioner also appears to seek equitable tolling based on ineffective assistance by plea counsel.   He argues that counsel failed to investigate the case or challenge the report by the CYFD social worker.   (Doc. 6 at 5-6).   Petitioner contends that but for counsel's deficient performance, he would have rejected the plea and proceeded to trial.   *Id.* at 5.   These claims pertain to the merits of Petitioner's habeas claims, rather than the timeliness of his Petition.   Unfortunately, Federal Courts cannot consider the merits of a habeas claim unless the petitioner complies with the stringent procedural requirements of §§ 2244 and 2254, including the one-year limitation period.   *See U.S. v. Greer*, 881 F.3d 1241, 1244 (10th Cir. 2018) ("Before addressing the merits of [petitioner's] claim, he must show that he can satisfy the procedural requirements of the Antiterrorism and Effective Death Penalty Act (AEDPA).… The first of these barriers is timeliness.").

Petitioner also contends that his attorney refused to provide documents for three years, until he finally filed a disciplinary complaint in 2015.   (Doc. 6 at 3).   Based on the delay, Petitioner argues that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence."   28 U.S.C. § 2244(d)(1)(c).   The Disciplinary Board decision, which Petitioner attached to his show-cause response, contravenes his allegation.   The Disciplinary Board dismissed the complaint, stating: "[Counsel] has provided evidence that he did provide to your representative, Dina Miranda the documents on a disk, in October 2013."   (Doc. 6 at 18).   The decision goes on to note that Miranda had trouble opening the disk, and that counsel assisted her with those issues during the disciplinary proceeding.   *Id.*   Therefore, it appears that

8

counsel did not withhold records.[3]

Setting aside any issues with the disk, the show-cause response also fails to demonstrate that Petitioner could not have timely discovered the factual predicate for his claims using due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). To show "due diligence" in the habeas context, a petitioner must allege specific facts about the steps that he took to pursue his claim. *See Miller v. Marr,* 141 F.3d 976, 978 (10th Cir. 1998) (addressing due diligence under the equitable tolling standard, and noting that the inmate must provide "specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal" petition); *Brown v. Parker,* 348 F. App'x 405, 409 (10th Cir. 2009) (petitioners can only obtain tolling under § 2244(d)(1)(D) if they "*exercise ... due diligence*" to discover facts after entry of the criminal judgment) (emphasis in original).

Petitioner does not allege that his case file was unavailable immediately after his conviction in January 2010, or that he tried and failed to obtain the file from counsel before the one-year period expired in March of 2011. Instead, the show-cause response reflects that Petitioner requested his case file in 2013, or at the earliest, in 2012,[4] when he learned about habeas relief and began researching his claims. While the Court is sympathetic with Petitioner's efforts, the Tenth Circuit

---

[3] Petitioner also alleges he did not actually receive his case file until 2017. (Doc. 6 at 4). This allegation is controverted by the state court record. Petitioner's 2015 state habeas petition attaches numerous exhibits including the DNA test results, police reports, "case discussion record[s]," and discovery receipts signed by counsel. *See* RPN: Habeas Corpus Petition filed November 19, 2015 in Case No. D-202-CR-2007-01932.

[4] The show-cause response alleges that Petitioner tried to obtain documents for "three years ... to no avail" and "had no other choice but to file with the disciplinary board," which responded on April 23, 2015. (Doc. 6 at 3, 18). That would mean that he requested the documents in 2012. However, the state court docket reflects that Petitioner filed his first Motion for Records in October of 2013, and the Disciplinary Board decision reflects that counsel provided the disk to his representative that same month. (Doc. 6 at 18); *see also* MTN: Motion in Case No. D-202-CR-2007-01932. Even if Petitioner requested records as early as 2012, as he appears to assert in the show-cause response, it would not change the result in this case.

has rejected a nearly identical tolling argument under § 2244(d)(1)(D) where the petitioner "fail[ed] to explain why he waited … until" after the one-year period "to request his file" from counsel. *Brown,* 348 F. App'x at 409.  And, to the extent Petitioner waited so long because he did not initially know about habeas relief, the Tenth Circuit is adamant that ignorance of the law cannot excuse an untimely habeas filing.  *See Marsh v. Soares*, 223 F.3d 1217, 1229 (10th Cir. 2000) ("It is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing."); *Taylor v. Wade*, 789 F. App'x 674, 677 (10th Cir. 2019) ("[N]either [petitioner's] misapprehension of the law nor his … claim of ineffective assistance of counsel could excuse his failure to file a timely habeas petition.").  Petitioner is therefore not entitled to equitable or statutory tolling based on any errors or neglect by counsel.

In sum, the Court concludes that Petitioner's show-cause response (Doc. 6) does not establish grounds for tolling.  The one-year limitation period expired on March 1, 2011, and the federal habeas proceeding filed on June 13, 2018 is time-barred.  The Court must dismiss the Petition (Doc. 1).  The Court will also deny a certificate of appealability under Habeas Corpus Rule 11, as the time-bar is not reasonably debatable in this case.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability can only issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

**IT IS ORDERED** that Petitioner Luis Pallares' 28 U.S.C. § 2254 Habeas Corpus Petition (Doc. 1) is **DISMISSED**; a certificate of appealability is denied; and a separate judgment will be entered closing the civil case.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE